**STATE of Tennessee, Appellee,**

v.

**Billy Lewis WRIGHT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 10, 1992.

Permission to Appeal Denied by Supreme Court May 26, 1992.

Greg W. Eichelman, District Public Defender, Charles G. Currier, Asst. Dist. Public Defender, Morristown, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, C. Berkeley Bell, Jr., Dist. Atty. Gen., Edward Sempkowski, Asst. Dist. Atty. Gen., Morristown, for appellee.

## OPINION

SUMMERS, Judge.

Appellant was indicted for the commission of five criminal offenses. After a jury trial, he was convicted of two charges: theft of property valued at more than $1,000.00 but less than $10,000.00 and possession of an automobile with altered or removed serial numbers. The court sentenced him to serve twelve years in the Department of Correction for the theft offense and thirty days in the county jail for the other offense. The sentences were ordered to be served concurrently to each other but consecutively to a prior conviction for which appellant was on parole at the time of the instant offenses. Appellant alleges four errors of prejudicial dimensions.

## FACTS

The first witness presented by the state was Jess Arnett, an investigator for the Criminal Investigation Division of the Tennessee Highway Patrol (hereinafter "CID"). In the course of his duties investigating auto thefts, Arnett's supervisor relayed information to him concerning appellant's possible criminal behavior. Appellant was working as a mechanic in a Morristown, Tennessee service station. Arnett and two other officers visited appellant at this service station, identified themselves, and asked appellant if they could inspect his car because they had information that it might be a stolen vehicle. Appellant had driven a 1987 Chevrolet Camaro to work, and he signed a consent form allowing them to search that vehicle.

Arnett noticed that the plate bearing the public vehicle identification number on the dashboard of the Camaro looked as if it did not belong to that car. According to Arnett's testimony, the car was a nice, shiny, black car and did not appear to have any damage on it. In contrast, the plate bearing the vehicle identification number was scratched and rusty, as if it had been exposed to weather. He believed the plate bearing this weathered number was probably taken from a wrecked vehicle which had been sitting in a junkyard and then later transferred to this Camaro. Using the vernacular of car thieves, Arnett called this a "salvage switch."

Subsequently, Arnett sought to examine the federal safety standards sticker located in the door frame or on the door itself, because that sticker would have had the full vehicle identification number on it. However, the sticker was missing from this vehicle. Arnett then examined the identification number on the motor and determined that the motor belonged to a stolen car. By tracing the motor identification number, Arnett was able to determine that the correct public vehicle identification number for the car was not the one actually thereon. Police records showed that this car had been stolen from Rodgers' Cadillac in Knoxville on January 11, 1990.

Arnett had further information that appellant had more stolen vehicles at his residence and obtained appellant's authorization to go to his residence and search the premises. Appellant gave his home address as 933 Cleveland Avenue. When the officers arrived at 933 Cleveland Avenue, they found a Chevrolet Silverado pickup truck in the driveway and two vehicles in the basement, a 1990 Dodge Daytona and a Dodge Dakota pickup truck. These vehicles had been stolen within the previous week.

Arnett searched the basement and found a white purse and a purple bag. The purse contained numerous tools which Arnett knew to be used in the theft of automobiles. The purple bag contained two advertising tags from Dennis Powell Chrysler–Plymouth and one from a dealer named Sherwood. It contained more tools which could be used to steal a car, specifically a set of side cutters, a screwdriver, and a pair of needle nose pliers. The bag also contained a hinge from a window key box. A window key box is a metal box which dealers often hang on their car windows for purposes of holding and locking the car keys.

Officer Don Watson, also an investigator for the CID, took a statement from the appellant after advising him of his Miranda rights. Appellant stated that two friends sold him the Camaro for $8,000.00 and that he had been making payments of $250.00 per month. He also stated that these friends had given him keys to certain vehicles and paid him to go to car lots in other cities and drive the vehicles to his house in Morristown.

Appellant was not arrested at the time he gave his statement to Officer Watson. Several days later, however, the police arrested him; and he made a second statement. In this second statement, appellant admitted that he had stolen the black Camaro in Knoxville and he had dug up a fence post in order to drive it off the lot.

The general sales manager at Rodgers' Cadillac identified the Camaro found at appellant's place of employment as a car that had been displayed on his car lot. The car

had been stolen on January 11, 1990. The lot was surrounded by a fence of steel posts; and on the day that the Camaro was discovered missing, the manager noticed that one of the steel posts had been dug out of the ground.

Appellant testified on his own behalf. He testified that he was living with his mother around the time that he was arrested, and not at 933 Cleveland Avenue. He stated his address as 933 Cleveland Avenue on the day the officers spoke with him because that was where his girlfriend lived, and he could not remember his mother's address. During his testimony he denied that he stole any of the vehicles in question and denied that he knew the vehicle he was driving was stolen.

According to appellant's trial testimony, his girlfriend, Loretta Dotson, gave him the Camaro because she had wrecked his car. He testified that he previously admitted to stealing the vehicles in question so Dotson would not go to jail. Dotson allegedly called him before the police arrived at the service station and informed him of the stolen vehicles so he would know how to confess. At that time, Dotson was pregnant; and she had informed appellant that the baby was his. Appellant contends that he confessed to the crimes because he was concerned about the welfare of his girlfriend and his unborn child.

Loretta Dotson testified at trial. She corroborated appellant's testimony by saying that at the time of appellant's arrest, she resided at 933 Cleveland Avenue; and appellant did not live with her. Ms. Dotson, who worked as a prostitute, met a man named Bill Reed who offered to pay her for letting him store stolen cars on her property. She testified that she allowed appellant to drive one of the stolen cars because she had wrecked his car.

According to Dotson's testimony, before the police came to her house to search the basement, she became suspicious that her house was under surveillance. She was afraid they might discover several stolen cars on her property, so she called appellant at work and convinced him to confess for her. She emphasized that she was

pregnant with his child and that he should do whatever he could to help her stay out of jail.

Another witness who testified on behalf of appellant was Bill Reed. He had been convicted of many felonies and was serving time in the Morgan County Regional Correctional Facility when he met appellant. They exchanged stories and when appellant informed Reed that he was charged with stealing cars that had been found at Loretta Dotson's residence, Reed realized that appellant had been charged with the theft of cars that he, Mr. Reed, had stolen. Reed testified that appellant did not assist him in stealing any vehicles. Reed stole the cars and took them to Loretta Dotson's house at 933 Cleveland Avenue. Reed specifically described the three vehicles that were found on Dotson's premises and admitted to stealing those vehicles. Although Reed candidly made these self-incriminating statements, he testified that he did not steal the 1987 Camaro that appellant had driven to work on the day of Officer Arnett's visit.

I. SUFFICIENCY OF THE EVIDENCE

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn.1983). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the defendant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The defendant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); Rule 13(e), T.R.A.P. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984). *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978).

Appellant was indicted for five offenses: (1) theft of a 1990 Chevrolet truck; (2) theft of a 1989 Dodge Daytona automobile; (3) theft of a 1990 Dodge Dakota pickup truck; (4) theft of a 1987 Chevrolet Camaro automobile; and (5) possession of a 1987 Chevrolet Camaro automobile with an altered and/or removed manufacturer's serial number. The jury obviously believed some of appellant's proof because it only convicted appellant of the last two offenses listed above. Appellant gave three completely different statements concerning the charged offenses. This was certainly a source of confusion for the jury.

■ An analysis of the jury's verdict seems to reveal that the jurors believed the testimony of appellant's witness, Bill Reed. Although Mr. Reed admitted stealing the other three vehicles, he denied any involvement with the theft of the black Camaro. Combining Reed's testimony with appellant's earlier admission that he stole the Camaro, the jury acquitted appellant on all counts except those relating to the Camaro. In our opinion, there was overwhelming evidence to support the jury's verdicts in this case. Appellant's sufficiency issue is overruled.

## II. ADMISSION OF PREVIOUS CONVICTIONS

Prior to trial the state gave written notice to the appellant that it intended to impeach him with ten of his previous felony convictions. Appellant filed a motion requesting that the state be ordered to show, for each conviction, that the probative value for truthfulness outweighed the risk of unfair prejudice. The trial court considered each conviction and decided that

the state could use only three convictions. The court's ruling was as follows:

> I believe it will be appropriate to use the three 1984 convictions. They all involve dishonesty. One of them is similar to the case at hand but I believe the probative value of it, because it involves dishonesty, and the probative value on the issue of credibility outweighs any unfair prejudice to the defendant.

The three 1984 convictions which were deemed admissible by the trial court were: (1) receiving stolen property (an automobile) valued at more than $200.00; (2) fraudulent appropriation of property valued at more than $200.00; and (3) disposing of secured property valued at more than $200.00.

■ With the knowledge that the state intended to use these three convictions to impeach appellant on cross-examination, defense counsel asked the appellant about these convictions during direct examination. On cross-examination the state let appellant's testimony stand and did not make any inquiry with regard to appellant's prior convictions. We first point out that the state is correct in maintaining that appellant has waived this issue because he did not include it in his motion for new trial. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence ... or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." Rule 3(e), T.R.A.P. Nevertheless, we will address the merits of the issue as presented.

■ As with any other witness, if an accused chooses to testify he may be impeached by his previous convictions. However, unlike other witnesses, our evidentiary rules provide certain safeguards for the accused. Rule 609(a)(3) of the Tennessee Rules of Evidence contains the following requirement:

> If the witness to be impeached is the accused in a criminal prosecution, the

State must give the accused reasonable written notice of the impeaching conviction before trial, and *the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.* The court may rule on the admissibility of such proof prior to trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination. (Emphasis added).

The procedural safeguards provided in Rule 609 were undertaken in the present case. The state gave written notice, appellant requested a hearing on the issue; and the court, after a hearing on the issue, determined that the probative value of three of appellant's prior convictions outweighed any unfair prejudicial effect that their admission may cause.

▉▉▉ In our opinion the court ruled properly. The three convictions that the court admitted were relevant to appellant's credibility. Under these facts, we find no showing that this evidence prejudiced appellant in any way. It is worth noting again that the jury acquitted appellant on three of the five indicted offenses. We believe that the record clearly shows that the jury fairly and accurately weighed all the evidence and rendered a just verdict. The appellant has not shown this Court that the trial court abused its discretion. Accordingly, we find this issue to be without merit.

## III. SENTENCING

The appellant was convicted of theft of property valued at $1,000.00 or more but less than $10,000.00. This is a Class D felony and carries a sentencing range of two to twelve years. T.C.A. §§ 39–14–105 and 40–35–112. The court found appellant to be a career offender as defined in T.C.A. § 40–35–108(a)(3). As such, the court sentenced appellant to the maximum amount of time within Range III as required by T.C.A. § 40–35–108(c).

▉▉▉ Appellant takes issue with the court's finding that he was a career offender. In order to classify a convicted felon as a career offender under T.C.A. § 40–35–108(a)(3), the sentencing court must find beyond a reasonable doubt that the defendant had previously received "[a]t least six (6) prior felony convictions of any classification."

▉▉▉ Although the state listed ten prior felony convictions for purposes of enhancement, three of these convictions were entered on the same day; and defense counsel argued that the offenses also occurred on the same day. The statute requires felonies committed as part of a single course of conduct within one twenty-four-hour period to constitute one conviction for the purpose of determining the number of prior convictions. Since it was unclear at the time of the sentencing hearing whether these three offenses were committed on the same day, the court considered them as one conviction.

In the state's notice of its intention to seek sentencing of the defendant as a career offender, it listed the following prior convictions:

1. Petit Larceny.
2. Attempt to Commit a Felony.
3. Third Degree Burglary.
4. Grand Larceny.
5. Grand Larceny.
6. Felonious Assault with Intent to Commit Voluntary Manslaughter.
7. Third Degree Burglary and Grand Larceny.
8. Receiving Stolen Property Valued Over $200.00, Fraudulent Appropriation of Property Valued Over $200.00, and Disposing of Secured Property Valued at over $200.00.

The appellant essentially contests the court's consideration of the above larceny convictions in order to find him to be a career offender.

First, appellant argues that since petit larceny is no longer a felony then it is not a prior felony conviction as intended by

T.C.A. § 40–35–108. As the law existed when appellant was convicted of petit larceny, the larceny of any property valued at under $200.00 was a felony. Under present law, the larceny of property valued at under $500.00 is only a misdemeanor. T.C.A. § 39–14–105(1). Second, appellant contends that the above listed grand larceny convictions are also not prior convictions as contemplated by the statute. Since the criminal court records only reflect that the property stolen in these grand larceny convictions had a value of more than $200.00, there is the possibility that such property had a value of less than $500.00. Thus, appellant argues, if these offenses had been committed subsequent to the enactment of the Criminal Sentencing Reform Act of 1989, then the conviction for such offenses may only have resulted in misdemeanors, not felonies. He adds that since T.C.A. § 40–35–108 requires the court to find "beyond a reasonable doubt" that he is a career offender, then we should remand this case for another sentencing hearing at which time the state should be required to show that the prior crimes in question are in fact felony convictions within the meaning of T.C.A. § 40–35–108.

■ This Court is of the opinion that appellant is not entitled to the relief sought. We believe the clear language of the statute answers the question presented. When calculating the number of prior convictions a defendant has received, "[a]ll prior felony convictions including those occurring prior to November 1, 1989, shall be included...." T.C.A. § 40–35–108(b)(2). November 1, 1989 is the effective date of the Criminal Sentencing Reform Act of 1989. The legislature, in enacting T.C.A. § 40–35–108, was aware that some offenses which were felonies under prior law were no longer felonies under the new Act. There appears to be no doubt that the legislature intended to permit consideration of all prior felony convictions occurring during the defendant's life. We add that T.C.A. § 40–35–118 determines the classification of felony offenses in Title 39 committed between July 1, 1982 and November 1, 1989. Under that statute grand larceny is a Class D felony and petit larceny is a

Class E felony. On the other hand, for offenses committed prior to July 1, 1982, prior law applies "and remain[s] in full force and effect in every respect, including, but not limited to, sentencing, parole and probation." T.C.A. § 40–35–117(c).

We believe that the legislature intended the prior convictions in question to be treated as felonies. For that reason, we affirm the trial court's decision to treat them as such.

## IV. BAIL PENDING APPEAL

The appellant contends that the trial court abused its discretion when it denied his request for an appeal bond. We find this issue to be without merit for various reasons.

■ Appellant has waived this issue because he has failed to cite any authority in his brief to support his argument. Rule 10(b), Rules of the Court of Criminal Appeals. Additionally, we find that appellant has failed to comply with Rule 8, T.R.A.P.

■ Even if this issue were properly presented, the appellant would not be entitled to relief because the issue is moot. Appellant was indicted for other offenses subsequent to his conviction in the instant case, therefore his bond would have been revoked as a matter of law. T.C.A. § 40–11–113(a)(4). This issue is also moot because the instant convictions are hereby affirmed; and if appellant were presently on bond, his bond would be immediately revoked.

## V. CONCLUSION

Finding no merit to any of the issues presented, appellant's convictions and sentences are affirmed in all respects.

WADE and TIPTON, JJ., concur.