IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2002

## STATE OF TENNESSEE v. LARRY BROOKS

**Appeal from the Circuit Court for Crockett County**
**No. 3216     L. T. Lafferty, Judge**

---

**No. W2001-02478-CCA-R3-CD  - Filed April 26, 2002**

---

The Defendant, Larry Brooks, was convicted by a jury of aggravated robbery, aggravated assault, aggravated burglary, vandalism, and theft up to $500.  The Defendant was subsequently sentenced as a Range III, persistent offender to twenty years for the robbery, ten years for the assault, ten years for the burglary, and eleven months, twenty-nine days for each of the misdemeanors, all sentences to run concurrently.  In this direct appeal the Defendant raises four issues:  (1) whether the trial court erred in denying his motion to suppress; (2) whether the evidence is sufficient to support his convictions; (3) whether the trial court erred in sentencing the Defendant more than forty-five days after the jury verdict; and (4) whether the trial court erred in classifying the Defendant as a persistent offender in imposing sentence.  Finding that principles of double jeopardy prohibit the Defendant's convictions for aggravated assault and theft, we reverse and dismiss those convictions.  In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part;**
**Reversed in Part**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

S. Jasper Taylor, IV., Bells, Tennessee, for the appellant, Larry Brooks.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; and Gary Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The victim, Ms. Bennie Faye Leggett, testified that between 6:30 and 7:00 p.m. on the evening of November 22, 1999, she was sitting in her den watching televison when a black man entered her house and asked her if she had any money.  She responded that she had "a little," and the man then brandished a box cutter with the blade displayed, telling her he wanted her money.  Ms.

Leggett retrieved her billfold and gave the man two twenty dollar bills and several one dollar bills. The man took the bills, as well as some change laying on a table, and left. Ms. Leggett then locked her doors and called the police. Ms. Leggett testified that she had been "terrified" by the encounter. When the police arrived, they discovered that a storm window had been removed from a back bedroom window, and the window opened. Ms. Leggett did not identify the Defendant at trial.

George Boykin testified that he was a neighbor to Ms. Leggett, and that he saw the Defendant standing in his yard on the evening of the burglary. Mr. Boykin did not know why the Defendant was there. The Defendant asked Mr. Boykin for a ride to Bells, where the Defendant lived. Mr. Boykin accommodated the Defendant, and when he returned, found "a yard full of police." In response to the officers' questions, Mr. Boykin explained where he had dropped off the Defendant. Mr. Boykin testified that there "[w]asn't nothing wrong with [the Defendant] when [he] saw him."

Officer Jeff Sills responded to the call and spoke with Ms. Leggett. Officer Sills testified that Ms. Leggett was "very upset." Ms. Leggett explained what had happened and gave Officer Sills a description of the burglar. After speaking with Ms. Leggett and Mr. Boykin, Officer Sills apprehended the Defendant and recovered an orange box cutter from a rear pocket of the Defendant's jeans. Officer Sills also recovered thirteen dollars and a lighter from the Defendant's person, and a crack pipe found in the Defendant's "vicinity." Officer Sills testified that the Defendant appeared to be under the influence of some type of intoxicant, and for that reason decided not to interview him that night.

Officer Sills testified that he and Deputy Barney Robertson interviewed the Defendant the next day at about 4:00 in the afternoon. The Defendant was "very apologetic," and began explaining what had happened as Officer Sills was trying to read him his rights. Officer Sills asked the Defendant to stop until he was finished with the rights waiver, and the Defendant subsequently signed the rights waiver form. The Defendant confessed to the events of the previous night, and Officer Sills asked him to write out his statement. The Defendant told Officer Sills that he wanted Officer Sills to write the statement, which Officer Sills did. The Defendant then signed the statement. The text of the statement is as follows:

> I Larry Brooks walked from Gadsden to Fruitvale at which time I walk up to the house to rear and took the window screen and the storm window out, at which time I Larry Brooks went into house[.] [T]he victim was watching tv and told her to give me her money. I could have had the box cutter in my hand[.] I got two $20.00 bills from her purse and I Larry Brooks left went across the street and got a ride from George Boykin to Bells. I got the crack cocaine from off Woods Road.

Officer Sills testified that, the next day, the Defendant sent out a letter to Officer Sills for delivery to Ms. Leggett. The letter was signed by the Defendant. The text of the letter is as follows:

Hi! I just want to say I'm sorry for my actions. I was druged [sic], hope you can forgive me. I hardly remember what happen and I really fill [sic] bad. I hope I can get help from the courts. I know I'm in trouble but I'm not a bad person. I was doing great until I smoked a bad piece of dope. Seem like I lost my mind and I think [sic] God for not allowing me to harm you because I had no control of my body. Please don't hate me, I'm sorry. I no [sic] you believe in God so ask God to help me although I did you wrong. It wasn't meant to be. I'm sorry. Larry

Deputy Barney Robertson did not participate in the Defendant's apprehension, but did participate in taking the Defendant's statement the next day. Deputy Robertson testified, "[the Defendant] told us exactly where -- what window he went through and that he want[ed] to go ahead on and get it over with because he didn't want to bring this old lady to trial and drag her through all this stuff." According to Deputy Robertson, the Defendant subsequently explained that "he couldn't write that good that he wished somebody would write [his statement] for him."

The Defendant testified, and stated that he "did not break in [Ms. Leggett's] house and [he] did not rob her." With respect to his confession, the Defendant testified that when Officer Sills and Deputy Barney took him out of his cell, they told him that if he "didn't apologize to that woman, [he] was going to be in jail a long time." The Defendant also stated that one of the officers told him that the victim had given his name and that they had his fingerprints on the victim's purse. He denied telling Officer Sills the matters contained in the written statement, stating that he signed a blank piece of paper. He admitted writing the letter of apology, explaining that he wrote it the night he was apprehended while he was "strung out" on cocaine and after he was told that he would be there "a long time" if he didn't apologize. The Defendant testified that he gave the letter to Officer Sills the next morning, explaining that if the victim could identify him, he would "take the charge." The Defendant testified that he was in Fruitvale to visit "Sarah and them's house" but they weren't home, so he walked over to Mr. Boykin's house to get a ride to Bells.

On cross-examination the Defendant explained that he had been carrying the box-cutter because he had used it earlier in the day to lay a rug. Also on cross-examination, the Defendant denied that he signed the rights waiver form, and explained that he asked for the letter of apology to be returned to him after he "came down" from the cocaine and realized he hadn't committed the crimes. He stated that Officer Sills refused to return the letter. The Defendant also testified on cross-examination that he remained "strung out" from the cocaine for two weeks. The Defendant testified that he admitted to the crimes "[b]ecause they made me feel like I did while I was on the drugs."

The Defendant first contends that the trial court erred in refusing to suppress his statement. We initially note that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Moreover,

questions of witness credibility, the weight and value of the evidence adduced at the suppression hearing, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. Id. When reviewing a trial court's ruling on a motion to suppress, this Court may consider both the evidence adduced at the suppression hearing and the evidence presented during the subsequent trial. See State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

During the suppression hearing, Officer Sills, Deputy Barney Robertson, and the Defendant testified similarly to their testimony at trial. That is, the law enforcement officers testified that the Defendant made a voluntary confession, and the Defendant testified that he did not, but merely signed a blank piece of paper that Officer Sills then filled in with Officer Sills' version of the events. The trial court ruled at the suppression hearing as follows:

> So, it comes down here to an assessment of the credibility of the witnesses which I would find more reasonable on behalf of the State based on their demeanor, their sources of information and things like that. I don't find it believable or plausible that the officers had him sign a blank piece of paper and then filled in the information. So, in essence, I deny the Motion to Suppress.

The evidence does not preponderate against the trial court's findings. This issue is without merit.

The Defendant next contends that the evidence is not sufficient to sustain his convictions, pointing out that a confession must be corroborated by sufficient independent proof to support a guilty verdict. We acknowledge that, as recently noted by our supreme court, "[i]t is a well-established principle of law in this state that a conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti." State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000). However, the corroborating evidence is sufficient if it tends to connect the defendant with the commission of the offense, even where the evidence is slight and entitled to but little weight when standing alone. Id. (citing Ricketts v. State, 241 S.W.2d 604, 606 (Tenn. 1951)).

In this case, the Defendant's confession is corroborated by his presence near the scene of the crime and the presence of the box-cutter on his person. While this evidence may, indeed, be only "slight," it is sufficient to corroborate the Defendant's confession. Accordingly, the evidence is sufficient to support the Defendant's convictions, and this issue is without merit.

Although not raised by either party in this appeal, we find plain error requiring the reversal on double jeopardy grounds of the Defendant's convictions of theft and aggravated assault. See Tenn. R. Crim. P. 52(b). Theft is a lesser-included offense of aggravated robbery. See generally, State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). See also State v. Bowles, 52 S.W.3d 69, 79 (Tenn. 2001); State v. Hayes, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999) (finding that "theft is a lesser included offense of robbery and aggravated robbery.") Because the Defendant's theft conviction in this case is based upon the same facts as his aggravated robbery conviction, double jeopardy principles require that his theft conviction be dismissed. See Hayes, 7 S.W.3d at 55-56

(noting that "[a]n offense encompassed in total within another offense . . . does not require proof of an additional fact, and it is therefore considered the same offense and barred by double jeopardy.")

Double jeopardy considerations also require reversal of the Defendant's aggravated assault conviction. In State v. Denton, 938 S.W.2d 373, 381 (Tenn. 1996), our supreme court set forth a four-step analysis for determining whether multiple convictions arising from the same conduct are barred by Tennessee's constitutional prohibition against double jeopardy: (1) a comparison of the statutes giving rise to the convictions under Blockburger v. United States; (2) an analysis of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. No one of these steps is determinative; rather the results of each must be weighed and considered in relation to each other. Id.

The Blockburger test provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). Aggravated robbery, as charged and proved in this case, is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1) (emphasis added). Aggravated assault, as charged and proved in this case, is intentionally or knowingly causing another to reasonably fear imminent bodily injury, accomplished with a deadly weapon. See id. § 39-13-102(a)(1)(B). Thus, aggravated robbery requires a theft of property, an element which is not required for a conviction of aggravated assault. Aggravated assault requires that the victim "reasonably fear imminent bodily injury," an element not necessarily required for aggravated robbery.[1] Accordingly, we conclude that aggravated assault and aggravated robbery are not the "same" offense under Blockburger.

The other three steps of Denton indicate, however, that the Defendant's dual convictions for aggravated assault and aggravated robbery in this case are based on the "same" offense and are therefore barred by double jeopardy. The same evidence was used to prove both offenses: the Defendant accosted the victim in her home and brandished a box cutter in order to persuade her to give him money. There was but a single victim, and a single act. The purpose of each statute is to prevent assaults and robberies with deadly weapons. Accordingly, we conclude that, under the principles set forth in Denton, the Defendant's dual convictions for aggravated robbery and

---

[1] Aggravated robbery may be committed without any fear on the part of the victim, if it is accomplished by violence. See Tenn. Code Ann. § 39-13-402(a)(1). Pointing a deadly weapon at the victim during the course of an aggravated robbery, as was done in this case, constitutes violence. See State v. Allen, __ S.W.3d __, __, 2002 Tenn. LEXIS 76, at *8 (Tenn. 2002). But see State v. Aaron Benard Gray, No. 02C01-9707-CC-00270, 1998 Tenn. Crim. App. LEXIS 505, at *6-7 (Jackson, May 1, 1998) ("[a]ggravated assault causing another to reasonably fear imminent bodily injury by the use of a deadly weapon is a lesser included offense of aggravated robbery by the use of a deadly weapon.")

aggravated assault are barred by double jeopardy. Therefore, we reverse and dismiss the Defendant's conviction for aggravated assault.

In his next issue the Defendant contends that the trial court erred when it conducted his sentencing hearing on the forty-sixth day following the guilty verdicts. The Defendant relies upon a provision of our sentencing statutes which states, in pertinent part, "[b]efore imposing sentence or making other disposition upon . . . a verdict . . . of guilty, the court shall conduct a sentencing hearing without unreasonable delay, but in no event more than forty-five (45) days after the finding of guilt . . . ." Tenn. Code Ann. § 40-35-209(a).

We first note that "it is the general rule in Tennessee that statutory provisions which relate to the mode or time of doing an act to which the statute applies are not to be mandatory, but directory only." State v. Jones, 729 S.W.2d 683, 685 (Tenn. Crim. App. 1986). This general rule applies to this particular provision. Id. Moreover, the Defendant has demonstrated no prejudice resulting from this one day delay, and is therefore entitled to no relief. See id. (finding that "no prejudicial error requiring appellate reversal occurred with regard to this issue inasmuch as the delay in sentencing amounted to only three days . . . [and] without a showing by the appellant of resulting prejudice, any error must be harmless.") In short, this issue is without merit.

Finally, the Defendant contends that his sentence is excessive, arguing that the trial court erred in finding him to be a Range III, persistent offender. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant was convicted of aggravated robbery, a Class B felony,[2] and aggravated burglary, a Class C felony.[3]  A defendant may be classified as a persistent offender upon a finding that he has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-107(a)(1).  In this case, the State put on proof that the Defendant has multiple felony convictions dating from the period 1977 through 1988.  The trial court found that five of these prior convictions were Class D felonies occurring on separate dates,[4] and at least seven of them were Class E felonies.[5]  Accordingly, the trial court determined beyond a reasonable doubt that the Defendant was a persistent offender with respect to the instant felony convictions, and therefore subject to a Range III sentence.  See id. § 40-35-107(c).  The trial court subsequently sentenced the Defendant to the minimum sentences available for a Range III, persistent offender on Class B and C felonies.  See Tenn. Code Ann. § 40-35-112(c)(2), (3).

The Defendant now contends that the trial court erred, arguing that all but one of his prior convictions would have been Class E felonies or misdemeanors had the underlying offenses been committed after 1989, and that he therefore should be found to have insufficient prior felonies of the relevant classes to be classified as a persistent offender with respect to his instant felony convictions. In other words, the Defendant asserts that the trial court should have evaluated the classifications of his prior convictions as if the underlying offenses had been committed after 1989 rather than before. This Court has previously rejected this argument.  See State v. Wright, 836 S.W.2d 130, 136 (Tenn. Crim. App. 1992).  In Wright, the defendant contested the trial court's determination that he was a career offender, using an argument identical to the Defendant's.  In rejecting this argument, this Court noted that, "[w]hen calculating the number of prior convictions a defendant has received, '[a]ll prior felony convictions including those occurring prior to November 1, 1989, shall be included . . . .'"  Id. (quoting Tenn. Code Ann. § 40-35-108(b)(2)).  In light of this statutory provision, the Wright panel determined that "[t]he legislature, in enacting [the career offender provision], was aware that some offenses which were felonies under prior law were no longer felonies under the [Criminal Sentencing Reform Act of 1989].  There appears to be no doubt that the legislature intended to permit consideration of all prior felony convictions occurring during the defendant's life."  836 S.W.2d at 136.  See also State v. Chris Billingsley, No. 01C01-9506-CC-00166, 1996 Tenn. Crim. App. LEXIS 304, at *16 (Nashville, May 16, 1996).  The same analysis applies to the persistent offender provision.  Accordingly, the trial court did not err in refusing to classify the Defendant's prior convictions as though the underlying offenses had been committed after 1989.

---

[2]See Tenn. Code Ann. § 39-13-402(b).

[3]See Tenn. Code Ann. § 39-14-403(b).

[4]"Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions."  Tenn. Code Ann. § 40-35-107(b)(4).

[5]At least five of these occurred on separate dates.

The record supports the trial court's determination that the Defendant is a persistent offender with respect to the instant felony convictions, and therefore subject to Range III sentences. This issue is, therefore, without merit.

The Defendant's convictions of aggravated assault and theft are reversed and dismissed. The judgment of the trial court is otherwise affirmed.

_____
DAVID H. WELLES, JUDGE