IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 12, 2023, at Nashville

## STATE OF TENNESSEE v. CHRISTOPHER GUY

**Appeal from the Criminal Court for Shelby County
Nos. 14-03046; 14-03047; 16-01978     Paula L. Skahan, Judge**

_____

### No. W2023-00177-CCA-R3-CD

_____

The Defendant, Christopher Guy, appeals the trial court's revocation of his effective six-year probationary sentence for his convictions for two counts of misdemeanor domestic assault and one count of felony vandalism. The Defendant argues that (1) the trial court lacked jurisdiction to revoke his probation because he had completed his probationary period by the time the revocation warrant was filed and (2) the revocation warrant should have been dismissed due to law enforcement's failure to preserve evidence. The Defendant also contends that he should have been granted an appellate bond during the pendency of the appeal. The State responds that we should affirm the trial court's revocation order and that the Defendant is not entitled to relief on his appellate bond issue. Following our review, we determine that the Defendant had completed the probationary periods on his misdemeanor domestic assault convictions before the issuance of the revocation warrant but that the revocation warrant was timely as to the probation for his felony vandalism conviction. We affirm in part and reverse in part and remand for entry of an amended probation revocation order and a corrected judgment for the Defendant's felony vandalism conviction in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Criminal Court Affirmed in Part, Reversed in Part;
Case Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and MATTHEW J. WILSON, JJ., joined.

Terrell Lee Tooten, Memphis, Tennessee, for the appellant, Christopher Guy.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Danielle McCollum and William Wetter, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

On November 14, 2014, the Defendant pleaded guilty to two counts of misdemeanor domestic assault in cases 14-03046 and 14-03047. In case 14-03046, the Defendant received a sentence of eleven months and twenty-nine days suspended to a probationary period of two years. *See* Tenn. Code Ann. § 40-35-303(c)(2). The trial court awarded pretrial jail credits in case 14-03046 from July 23, 2013, to July 27, 2013, and from August 21, 2014, to November 14, 2014. In case 14-03047, the Defendant was sentenced to eleven months and twenty-nine days suspended to probation, to be served consecutively to his two-year probationary sentence in case 14-03046. The trial court awarded the Defendant one day of pretrial jail credit, April 28, 2013, for case 14-03047.

On May 10, 2017, the Defendant pleaded guilty to felony vandalism in case 16-01978. At the guilty plea hearing, the Defendant agreed that he had violated his probation in cases 14-03046 and 14-03047. The trial court accepted the State's recommendation for a three-year sentence on the felony vandalism charge but withheld judgment on that case and the revocation proceedings so that the parties could be heard as to whether the Defendant should be granted probation.

A probation hearing ensued on July 12, 2017. At the conclusion of the hearing, the trial court ordered the Defendant to serve three years on the felony vandalism charge, suspended to probation, and awarded the Defendant pretrial jail credits from March 10, 2015, to March 12, 2015, and from February 28, 2017, to May 10, 2017. The trial court also reinstated probation in cases 14-03046 and 14-03047. The judgment document for the felony vandalism charge reflects that the Defendant was sentenced to three years suspended to a six-year probationary term. The judgment document is silent as to whether the sentence was to be served concurrently or consecutively to cases 14-03046 and 14-03047. However, the transcript of the hearing indicates that the trial court sentenced the Defendant to serve a three-year probationary sentence in case 16-01978 consecutively to the probationary terms in cases 14-03046 and 14-03047.

On October 19, 2022, a probation revocation warrant pertaining to all three cases was issued alleging that the Defendant was involved in an incident in which the Defendant was shot twice and the Defendant, being a convicted felon, unlawfully possessed a gun. On January 4, 2023, the Defendant filed a motion to dismiss the revocation warrant. In his motion, the Defendant alleged that the State had lost or destroyed a video recording of the

incident that had been previously collected by officers. Relying on *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), the Defendant asked the trial court to dismiss the revocation warrant as a remedy for this lost or destroyed evidence.

The trial court initially heard the Defendant's *Ferguson* motion on January 4, 2023. The State conceded at the hearing that the video had in fact been lost and agreed "that there was negligence involved in the video being lost." Regarding negligence, the State argued that the trial court would "have to make a determination [as to] the degree after [the court] hear[d] from the officers." Regarding the contents of the lost video, the State explained, "The officers obtained a video and allegedly watched it and th[ey] say it was consistent that [the Defendant] had a gun on video." The trial court reserved ruling on the *Ferguson* issue, informing the parties that it would need to hear proof before it could make an appropriate ruling.

Prior to the revocation hearing on January 19, 2023, counsel for the Defendant stated his understanding that the State had agreed that the witnesses would not be allowed to talk about the video or what they had seen on the video.[1] The State agreed that it would not elicit such proof at the hearing.

Defense counsel then argued that the Defendant's October 19, 2022 revocation warrant was untimely filed and that the trial court should dismiss the revocation. Defense counsel argued that the Defendant was serving an effective six-year probationary sentence because the three-year probationary sentence for the felony vandalism conviction was to be served consecutively to the effective three-year sentence for the misdemeanor domestic assault convictions. Defense counsel argued that by the time the October 19, 2022 probation revocation warrant was filed, the Defendant had completed his effective six years' probation. As part of his contention on this point, the Defendant argued that one of his misdemeanor probations had expired before the 2017 revocation proceedings. Ultimately, the trial court rejected the Defendant's jurisdictional argument. While the trial court speculated that the argument might have been viable had it been raised in 2017, the trial court found that the argument was not raised in 2017, that "decisions were made[,]" and that the Defendant "was reprobated" at that time. The trial court then proceeded to hear proof on the revocation warrant.

Lonnie Orr testified that he was married to the Defendant's ex-wife, Ms. Brittany Gaston. Mr. Orr said that approximately one week before his altercation with the Defendant, he made a social media post which stated, "RIP to the Guy family." Mr. Orr explained that the Defendant misinterpreted this post as a threatening message. On March

---

[1] A different prosecutor represented the State at this hearing.

3, 2022, L.C., who was Mr. Orr's fifteen-year-old stepson, as well as the Defendant's biological son, had run away from home. Mr. Orr paid someone to tell him where L.C. was located, and Mr. Orr learned that L.C. was located at a gas station. Mr. Orr went to the gas station to retrieve L.C., and his wife met him there. Mr. Orr put L.C. in his wife's car, and as he was walking back toward the gas station, Mr. Orr heard his wife yelling. As Mr. Orr turned around to face the commotion, he noticed the Defendant. He said the Defendant pulled out a gun, cocked it, and asked Mr. Orr, "What [are] you going to do[?]" Mr. Orr pulled out his own gun and started firing at the Defendant because he was afraid the Defendant intended to shoot him. Mr. Orr explained that he believed the Defendant intended to kill him because the Defendant had threatened to kill him before. Mr. Orr said he saw the Defendant throw his gun, so Mr. Orr dropped his gun and fled to "somewhere safer." Approximately five minutes later, a detective called Mr. Orr and asked him to return to the gas station or else it was "going to be worse[] on" Mr. Orr. Mr. Orr returned to the gas station. On cross-examination, defense counsel asked Mr. Orr if he knew how the Defendant had been shot multiple times in the back of his body if Mr. Orr and the Defendant had been facing each other at the time of the shooting, and Mr. Orr replied that he did not know.

The Defendant testified that on March 3, 2022, L.C. had been missing for three days and that a family member showed him Mr. Orr's social media post stating "RIP to the Guy family." The Defendant said that L.C. called him and asked the Defendant to come pick him up at the gas station, and the Defendant drove to the gas station. He explained that by the time he arrived, Mr. Orr and the Defendant's ex-wife were already at the gas station with L.C. The Defendant argued with them about his son. The Defendant said that Mr. Orr shot him in the arm and that after the Defendant took two steps back and turned around, Mr. Orr shot him in the leg. The Defendant hid behind a car and waited for help. He said that he did not have a gun or any weapons. On cross-examination, the Defendant acknowledged that, as a convicted felon and a person on probation, he was not allowed to have a gun.

At the conclusion of the proof, counsel for the Defendant again argued that the Defendant had completed his probationary period prior to the issuance of the revocation warrant. Counsel repeatedly asked the trial court for a ruling as to whether this had occurred. The trial court denied these requests, saying only that the Defendant "was on probation" and that it was "not [the trial court's] job" to make such a determination. The trial court stated that this responsibility belonged to the Tennessee Department of Correction following revocation.

As to the merits of the revocation proceeding, the trial court found that the Defendant was a convicted felon and therefore was not allowed to possess a gun. The trial court said that there was "bad blood" between the parties and that Mr. Orr was not "blameless." The court said that it did not "believe [Mr. Orr] necessarily" but found that he was "very credible" at the hearing. The court reasoned that both Mr. Orr and the Defendant were concerned about L.C. and that the altercation was "unfortunate[.]" The court found that the police arrived at the gas station after the shooting, reviewed video footage, and charged the Defendant with aggravated assault. The court found that the police called Mr. Orr back to the gas station and did not charge him with anything. The court acknowledged that the footage had been lost and that it would not have helped the Defendant "at all" but rather would have "hurt" the Defendant.[2] The court found that the Defendant's gun was not recovered. The court found that the Defendant showed the gun to Mr. Orr and that Mr. Orr shot the Defendant several times. The court emphasized that the police did not charge Mr. Orr with anything and concluded that the Defendant had violated the terms and conditions of his probation. The trial court revoked the Defendant's probation and ordered him to serve all sentences in confinement.

The Defendant filed a timely notice of appeal.

## II. ANALYSIS

### A. Jurisdiction

On appeal, the Defendant argues that the trial court erred by revoking his probation. The Defendant argues that his sentences for each case had expired before the October 19, 2022 probation revocation warrant was filed; thus, the trial court should have dismissed the revocation warrant. Further, the Defendant argues that the trial court failed to properly calculate the Defendant's pretrial jail credit and failed to "articulate clearly how much time [the Defendant] should be serving." The State responds that the trial court properly revoked the Defendant's probation.

Appellate courts ordinarily review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). The issue raised by the Defendant, however, strikes at the trial court's authority to rule over the revocation proceeding in the first instance. The jurisdictional issue is a matter of law,

_____

[2] No proof was presented at the hearing regarding the surveillance footage.

which we will review de novo with no presumption of correctness. *See Abdur'Rahman v. State*, 648 S.W.3d 178, 187 (Tenn. Crim. App. 2020).

If a trial court determines that a defendant has violated the conditions of probation, it has the authority to revoke the defendant's probation and cause execution of the original judgment. Tenn. Code Ann. § 40-35-311. This authority exists "at any time within the maximum time which was directed and ordered by the court for such" suspended sentence. *Id*. § 40-35-310(a). A defendant is released from probation after his or her sentence has expired. *State v. Watkins*, 972 S.W.2d 703, 704 (Tenn. Crim. App. 1998). A trial court "has no authority to revoke probation after the sentence has elapsed." *Id*. If a probation revocation warrant is issued within the term of the suspended sentence, however, "the issuance of the warrant commences the revocation proceedings and thereby interrupts the running of the probationary period 'until such time as the trial court [may] hear and determine the issue raised by the [warrant].'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *McGuire v. State*, 292 S.W.2d 190, 193 (Tenn. 1956)).

"[W]hen a [d]efendant is on probation on two consecutive sentences and violates his probation before completion of the first term, the trial court has the authority to revoke all probation and order service of the original sentences." *State v. Anthony*, 109 S.W.3d 377, 380 (Tenn. Crim. App. 2001). If a defendant successfully completes a probationary sentence, however, "the trial court is without authority to revoke probation and order service of the original sentence." *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999) (citing Tenn. Code Ann. § 40-35-310).

1.    Jurisdiction over the Misdemeanor Sentences in Cases 14-03046 and 14-03047

The record indicates that, at the July 12, 2017 revocation proceeding pertaining to cases 14-03046 and 14-03047, the trial court reinstated the Defendant's probation in those cases by "commenc[ing] the execution of the judgment[s] as originally entered[.]" *See* Tenn. Code Ann. § 40-35-311(e)(1)(A). In other words, the trial court "order[ed] the original probationary period[s] to commence anew." *Hunter*, 1 S.W.3d at 644. The original probationary periods for these judgments were consecutive terms of two years and eleven months and twenty-nine days.

The Defendant briefly argues on appeal, as he did in the trial court, that at least one of the misdemeanor sentences had expired prior to the initiation of the 2017 probation revocation proceedings. This argument is without merit. First, as the trial court noted, the Defendant never challenged the trial court's jurisdiction over the misdemeanor cases during the 2017 proceedings. Indeed, the Defendant conceded to having violated his

probation in those cases. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonable available to prevent or nullify the harmful effect of an error."). If the Defendant sought to challenge the validity of the trial court's jurisdiction over his misdemeanor sentences in 2017, he should have done so at that time. Second, the Defendant failed to include in the record on appeal the probation violation warrant underlying the 2017 proceedings. Because the issuance of a warrant commences revocation proceedings and interrupts the running of the probationary period, *Shaffer*, 45 S.W.3d at 555, this document should have been included in the record to support the Defendant's contention on this point. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. May 30, 1991) (stating that in the absence of an adequate record on appeal, we presume that the trial court ruled correctly). Because the Defendant did not object at the time, and because the record is inadequate, we presume that the trial court had jurisdiction over both misdemeanor cases at the time of the 2017 probation revocation proceedings.

We now turn to the Defendant's main contention—that the trial court lacked jurisdiction over his misdemeanor cases at the initiation of the 2022 revocation proceedings. We begin with case 14-03046, which consisted of a two-year probationary period that the trial court had restarted on July 12, 2017. Pursuant to *State v. Watkins*, 972 S.W.2d 703, the Defendant argues that the effective term of his probationary period should have been reduced in 2017 by the amount of jail credit that he had accrued on the case at that point.

In *Watkins*, this court examined the effect that pretrial jail credit has on the maximum sentence allowed in misdemeanor cases. The defendant in *Watkins* had served five months and eight days of pretrial incarceration prior to the entry of judgment on his Class A misdemeanor convictions. *Id*. at 704. Following the revocation of his probation on these cases, the defendant in *Watkins* argued that the probationary period of one of his eleven months, twenty-nine sentences should have been reduced to account for his pretrial jail credit, thus rendering the probation violation warrant untimely. *Id*. This court agreed, noting that the maximum sentence for a Class A misdemeanor was eleven months and twenty-nine days, and holding that a probationary period undiminished by pretrial jail credit would have resulted in an effective sentence of eleven months and twenty-nine days *plus* five months and eight days, a sentence exceeding the statutory maximum. *Id*. at 705.

At issue here, however, is not the reduction of the Defendant's sentence of eleven months, twenty-nine days for a Class A misdemeanor as addressed in *Watkins*, but rather should the Defendant's extended probationary period of two years imposed pursuant to Code section 40-35-303(c)(2) for his domestic assault conviction be reduced by pretrial

jail credit. "Normally, the period of probation which may be imposed by a trial court cannot exceed 'the statutory maximum time for the class of the conviction offense[.]'" *State v. Epperson*, No. E2012-00268-CCA-R3-CD, 2013 WL 3466536, at *3 (Tenn. Crim. App. June 28, 2013) (quoting Tenn. Code Ann. § 40-35-303(c)(1)). Specifically, Code section 40-35-303(c)(1) provides the following:

> If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation either immediately *or after a period of confinement* for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

(Emphasis added.) However, pursuant to subsection (c)(2), for certain offenses, including domestic assault, the trial court "may sentence a defendant . . . to a period of probation not to exceed two (2) years," if certain statutory criteria are met. *See* Tenn. Code Ann. § 40-35-303(c)(2)(B)-(C).

In *State v. Epperson*, 2013 WL 3466536, this court addressed an argument similar to the one advanced by the Defendant in this appeal. The defendant in *Epperson* had received a split-confinement sentence of ninety days followed by a probationary period of two years pursuant to section 40-35-303(c)(2). *Id*. at *1. The defendant in that case argued that this sentencing structure created an effective sentence of ninety days plus two years, in excess of the statutory maximum sentence for his conviction offense. *Id*. This court disagreed, holding, "From a plain reading of the statute, a trial court may impose a period of partial confinement on a misdemeanor domestic assault conviction as well as a two-year probationary period." *Id*. at *4. In a concurring opinion, Judge Ogle wrote that the two-year probationary provision of section -303(c)(2)(B) must be read in conjunction with the general probationary provision of section -303(c)(1), which allows for a probationary period to commence "after a period of confinement." *See id*. at *6 (Ogle, J., concurring).

We agree with the reasoning set forth in the majority and concurring opinions in *Epperson*. The plain language of sections -303(c)(1) and -303(c)(2)(B) allows a trial court to impose a full probationary period of two years, even after a defendant has served "a period of confinement" on that case. Therefore, when the trial court "order[ed] the original probationary period to commence anew" on July 12, 2017, *see Hunter*, 1 S.W.3d at 644, the Defendant began service on the full two-year probationary period as set forth in the original judgment. Nonetheless, this probationary period expired on or about July 11,

2019, well before the issuance of the probation revocation warrant on October 19, 2022. Even though the Defendant was not entitled to a reduction of his effective two-year probationary period pursuant to *Watkins*, the trial court still lacked jurisdiction to revoke the Defendant's probation on case 14-03046.

The Defendant's consecutive suspended sentence of eleven months, twenty-nine days in case 14-03047 was not extended pursuant to Code section 40-35-303(c)(2), and is, therefore, governed by *Watkins*. That case commenced following the expiration of case 14-03046, on or about July 12, 2019. After the deduction of the one day of pretrial jail credit awarded in the original judgment, the eleven-month-and-twenty-nine-day sentence in case 14-03047 would have expired on or about July 9, 2020. Thus, case 14-03047 also expired well before the issuance of the probation violation warrant on October 19, 2022. The trial court lacked jurisdiction to revoke the Defendant's probation in both cases 14-03046 and 14-03047.

2.      Correction of Clerical Error in the Judgment for Case 16-01978

Before we turn to the expiration date of the felony vandalism sentence in case 16-01978, we must first address an anomaly with the uniform judgment document in that case. As stated above, the judgment document indicates that the trial court imposed a three-year sentence to be served as an alternative sentence of six years of supervised probation beginning on July 12, 2017. The document contains no reference to the misdemeanor sentences in 14-03046 and 14-03047. In its brief, the State argues that the revocation warrant of October 19, 2022, was issued within this six-year probationary period and was therefore timely to give the trial court jurisdiction to revoke the Defendant's probation in 16-01978. The State would be correct, except that the judgment document for case number 16-01978 does not accurately reflect the sentence actually imposed by the trial court in 2017.

Clerical errors, including a failure to record a defendant's sentence accurately on a judgment, may be corrected at any time pursuant to Tennessee Rule of Criminal Procedure 36. *See State v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015) (citing *State v. Moore*, 814 S.W.2d 381, 383 (Tenn. 1991)). To determine whether such an error has been made, "a court ordinarily must compare the judgment with the transcript of the trial court's oral statements." *Id*. "When there is a conflict between the judgment and the transcript of the trial court's statements, the transcript controls." *Id*. (citations omitted). A thorough review of the transcripts from the Defendant's guilty plea hearing on May 10, 2017, and his probation hearing of July 12, 2017, demonstrates that the trial court actually imposed a three-year probated sentence in 16-01978 to be served consecutively to the probationary

periods in 14-03046 and 14-03047. On remand, the judgment document in case number 16-01978 shall be corrected to reflect the sentence orally imposed by the trial court on July 12, 2017.

### 3. Jurisdiction over the Felony Vandalism Sentence in Case 16-01978

The three-year sentence actually imposed by the trial court in 16-01978 commenced on July 9, 2020, at the expiration of case 14-03047. It would have expired three years later, on July 8, 2023. We note that the Defendant's three-year sentence in case 16-01978 was undiminished by the seventy-three days of pretrial jail credit awarded in the judgment for that case. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999) (in a felony case, affirming the revocation of a four-year probationary sentence because a four-year incarcerative sentence expires after service of 1,460 days, and though the defendant had accrued 549 days of sentencing credit, as well as served a term of three years and 186 days on probation, he had neither served the entire four years nor successfully completed a four-year term of probation); *see also Barger v. Carlton*, No. E2006-01102-CCA-R3-HC, 2007 WL 1135489, at *2 (Tenn. Crim. App. Apr. 17, 2007) (in a felony case, noting, "[A]s a matter of law, pretrial jail credits do not affect or accelerate the expiration date of a defendant's probationary sentence"); *State v. Brooks*, No. W2004-00475-CCA-R3-CD, 2005 WL 990556, at *1-2 (Tenn. Crim. App. Apr. 28, 2005) (distinguishing *Watkins* and relying on *Taylor* for the proposition that a felony probationary sentence was undiminished by pretrial jail credit); *State v. Chumney*, No. W2004-00474-CCA-R3-CD, 2005 WL 924263, at *2-3 (Tenn. Crim. App. Apr. 21, 2005) (same). The issuance of the probation violation warrant on October 19, 2022, interrupted the service of the Defendant's probation in case 16-01978, and the trial court therefore had jurisdiction to revoke the Defendant's probation in that case.

### B. *Ferguson* Issue

The Defendant argues that the trial court erred by failing to dismiss the Defendant's probation revocation warrant because the State failed to preserve evidence. The Defendant relies on *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), and argues that his due process rights were violated when the State failed to preserve a video tape of his interaction with the victim. The State responds that the Defendant's argument is without merit.

In *Ferguson*, our supreme court explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial. 2 S.W.3d at 915-17. The *Ferguson* court rejected the federal "bad faith" analysis espoused in *Arizona v. Youngblood*, 488 U.S. 51 (1988), in favor of "a balancing approach in which bad faith is

but one of the factors to be considered in determining whether the lost or destroyed evidence will deprive a defendant of a fundamentally fair trial." *State v. Merriman*, 410 S.W.3d 779, 785 (Tenn. 2013) (citing *Ferguson*, 2 S.W.3d at 916-17 n.10).

The first step in a *Ferguson* analysis is to determine whether the State had a duty to preserve the evidence in question. *Ferguson*, 2 S.W.3d at 917. The State's duty to preserve evidence is limited to constitutionally material evidence described as "evidence that might be expected to play a significant role in the suspect's defense." *Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)); *see Merriman*, 410 S.W.3d at 785. To be "constitutionally material," the evidence "must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Merriman*, 410 S.W.3d at 785 (footnote omitted) (citing *Ferguson*, 2 S.W.3d at 915, 918).

If the trial court concludes that the State lost or destroyed evidence that it had a duty to preserve, the trial court must then consider three factors to determine the appropriate remedy for the State's failure: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. *Ferguson*, 2 S.W.3d at 917; *Merriman*, 410 S.W.3d at 785. If the trial court concludes, after balancing these factors, "that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Merriman*, 410 S.W.3d at 785-86 (citing *Ferguson*, 2 S.W.3d at 917).

The State argues on appeal that the Defendant "cites no law for the proposition that a *Ferguson* analysis is applicable to a probation revocation proceeding." The State contends that *Ferguson* does not apply in the context of a probation revocation proceeding, citing the "minimum requirements of due process" and the lesser standard of proof in such proceedings. We need not determine whether *Ferguson* applies in probation revocation proceedings because, as we will demonstrate, the Defendant waived any such issue in the trial court.

On January 4, 2023, the trial court stated that it needed to hear proof regarding the lost video recording from the officers involved before it could make a *Ferguson* determination. The trial court reserved its ruling on the issue until the January 19, 2023 probation revocation hearing, with the understanding that proof would be presented on the issue at that time.

At the beginning of the January 19, 2023 probation revocation hearing, the Defendant again raised the *Ferguson* issue, to which the prosecutor stated his understanding that the parties had agreed to conduct the hearing without mention of the video or its contents. The Defendant neither objected to this statement by the prosecutor, nor did he call any officers or witnesses to testify regarding the lost video recording.

Without determining whether *Ferguson* applies in the context of probation violations, we conclude that the issue is waived because the Defendant lodged no contemporaneous objection on the basis of *Ferguson* at the probation revocation hearing on January 19, 2023, nor did he put on necessary proof to allow the trial court to decide the issue. As the movant, it was the Defendant's responsibility to elicit proof at the hearing supporting his contention that the revocation warrant should be dismissed as a result of the lost video. This proof could have informed the trial court of the circumstances regarding the loss of this evidence, as well as the potential contents of the video based upon witnesses who had viewed it. This information would have been necessary for the trial court to knowledgeably rule on the Defendant's motion. Indeed, without this proof in the record, the Defendant cannot even satisfy the threshold showing required by *Ferguson*—that the video was "constitutionally material," meaning that it "potentially possess[ed] exculpatory value." *See Merriman*, 410 S.W.3d at 785. Because the Defendant did not present this proof to the trial court, this issue has not been properly preserved for appeal and has been waived. *See* Tenn. R. App. P. 36(a).

## C.     Bond

Finally, the Defendant asks this court to reconsider its denial of the Defendant's Tennessee Rule of Appellate Procedure 8 motion for release pending appeal. The State argues that this is not the appropriate avenue for the Defendant to seek reexamination of this court's previous denial. The State argues that the Defendant should have filed a motion for review in our supreme court within fifteen days of this court's denial. We agree with the State.

At the January 19, 2023 probation revocation hearing, defense counsel asked the trial court to set a bond while the Defendant appealed the trial court's decision, and the trial court denied the request. On April 6, 2023, this court denied the Defendant's motion for review of the trial court's denial of his request for bond pending appeal of his probation revocation. In his brief on appeal, the Defendant renews his argument that he should be released on bond. However, Tennessee Rule of Appellate Procedure 8(a) provides that a "party may appeal a Court of Criminal Appeals' decision for review by filing a motion for

review in the Supreme Court within fifteen days of filing of the Court of Criminal Appeals' order." The Defendant failed to utilize his available remedy of appealing this court's decision to our supreme court. Accordingly, the Defendant has failed to comply with Tennessee Rule of Appellate Procedure 8(a), and we deny his request to reconsider this court's denial of his request for bail. Further, because we are affirming the Defendant's probation revocation in case 16-01978, the issue is moot. *See State v. Wright*, 836 S.W.2d 130, 136 (Tenn. Crim. App. 1992).

### III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed in part and reversed in part. We vacate the probation revocation order and remand to the trial court for entry of an amended order that does not list cases 14-03046 and 14-03047. On remand, the trial court shall also enter a corrected judgment in case 16-01978 that accurately sets forth the sentence orally pronounced by the trial court on July 12, 2017, as set forth in this opinion.

_____
KYLE A. HIXSON, JUDGE