IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2003 Session

## STATE OF TENNESSEE v. CHARLES JOHNSTON

**Appeal from the Criminal Court for Carter County**
**No. S15655     Lynn W. Brown, Judge**

**No. E2002-02028-CCA-R3-CD**
**December 30, 2003**

Charles Johnston appeals from his Carter County Criminal Court conviction of contempt of court. He claims that the evidence does not sufficiently support the conviction, that his due process rights were violated in the conviction proceedings, that the court erroneously admitted an audiotape of prior proceedings in the general sessions court, that he was sentenced too harshly and unfairly denied judicial diversion, and that the lower court abused its discretion in setting his appeal bond. Because we discern no reversible error, we affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J. and THOMAS T. WOODALL, J., joined.

Leroy Tipton, Greeneville, Tennessee, for the Appellant, Charles Johnston.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Ken Baldwin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I**

The defendant, an Army recruiter, is the step-father of Erik Miller. In April 2001, Erik Miller was serving probationary sentences for various Carter County convictions. On April 30, the defendant approached General Sessions Court Judge John Walton about having Miller released from probation so that he could serve in the Army. This encounter was not in formal courtroom proceedings, and there not a written record or tape recording of it. As a result of the conversation, the exact tenor of which is disputed, Judge Walton signed an order "terminating" Miller's probation so that Miller could join the Army.

Sometime later, it came to the attention of Rusty Miller, who had been Erik Miller's probation officer, that Erik Miller was living in the local area. Because she was aware that Erik Miller had been released from probation so that he might serve in the Army, she called the defendant Johnston, who informed her that Erik Miller had enlisted in the Army Reserve and that there was no difference between the "Regular Army" and Army Reserve. Following the telephone conversation, the defendant faxed a letter to Rusty Miller stating that Erik Miller joined the Army Reserve on March 26, 2001 with a ship date of June 2, 2001. The letter further represented that Erik Miller "decided at the last minute to go Regular Army (active duty)" on the recommendation of his older brother and would be talking with his Company Commander and First Sergeant about this when he went to drill duty on July 21 and 22 and would get a new ship date at that time. As a result of the information she received, Rusty Miller commenced show cause proceedings against Erik Miller based upon his failure to go into active-duty Army service.

Judge Walton thereafter conducted a general sessions court hearing, wherein he rescinded the prior termination of Erik Miller's probation and found the defendant Charles Johnston in contempt for perpetrating a fraud upon the court. Johnston's appearance in court on the date of Erik Miller's show cause hearing was voluntary and not the result of legal process. After finding the defendant in contempt for perpetrating a fraud on the court relative to Erik Miller's release from probation, Judge Walton imposed a fine of $50 and sentenced the defendant to serve ten days in jail.

After three days of jail confinement, the defendant filed a notice of appeal. Bond was set, and the defendant obtained release. The matter then proceeded to trial *de novo* in the criminal court, and the defendant was found guilty, fined $50, and sentenced to ten days in jail. This appeal followed.

**II**

Before resolving the legal issues in this case, a recitation of the factual issues and evidence is in order. The factual disputes center on whether the defendant misled General Sessions Court Judge Walton in obtaining Erik Miller's release from probation. The parties presented sharply conflicting evidence at the criminal court trial. According to Judge Walton, the defendant represented himself as Erik Miller's recruiter and did not reveal his step-parental relationship with Miller. Judge Walton did not recall whether the defendant was in uniform, but he thought he probably was. Judge Walton understood that he was releasing Miller for active-duty Army service, and he discussed this with the defendant. According to Judge Walton, there was never any mention of Miller serving in the Army Reserve. Judge Walton claimed that he told the defendant to inform him if Erik Miller did not ultimately enlist.

For his part, the defendant claimed that he did not attempt to mislead Judge Walton in obtaining Erik Miller's release from probation. The defendant minimized his involvement in the events leading up to the probation termination. He claimed that Erik Miller himself, as well as Miller's mother, had done most of the talking to Judge Walton. The defendant testified that he was not wearing his military uniform on the date of the probation termination, and he did not identify

-2-

himself as a recruiter. He claimed that asking a judge to release a recruit from probation was not something that he does as a recruiter. He claimed that Judge Walton told Erik Miller, not the defendant, to notify the court should Miller not follow through with his military service, and the defendant denied otherwise having any obligation to do so. The defendant testified that on April 30, Erik Miller had already been sworn into the Army Reserve on March 26, and Miller had a "ship date" for basic training of May 2. According to the defendant, Erik Miller was not able to enlist directly into the active duty Army because he had only a GED, not a high school diploma. For this reason, he would have to complete his training and six months of reserve duty before applying for active duty service.

After receiving the evidence, the criminal court found that the case turned on the comparative credibility of the defendant and Judge Walton. In that respect, the court found that the defendant's testimony was unworthy of accreditation based upon the defendant having appeared deceptive and having been evasive in his testimony. Further, the court found that the defendant had engaged in willful deception of Judge Walton, who terminated Erik Miller's probation as a result of that deception. Thus, the court found the defendant guilty of contempt.

### III

We consider first the defendant's challenge to the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W. 3d 1, 8 (Tenn. 2000).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. *Id*.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id*.

The defendant was convicted of criminal contempt, which consists of "[t]he willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice[.]" *See* Tenn. Code Ann. § 29-9-102(1) (2000). The defendant argues on appeal that he should not be held responsible for Erik Miller's decision not to honor his "ship date" of May 2. The case, however, is not that simple. The evidence accredited by the lower court supports a conclusion that the defendant misrepresented to Judge Walton that Erik Miller must be released from probation in order to join the Army, when in fact, Miller had already joined the Army as a reservist. Likewise, the evidence supports a conclusion that the defendant misled or at least did not correct any misimpression Judge Walton had that Miller would be on active duty, not reserve duty. This evidence demonstrates that the defendant is guilty of contempt. Whether to accept the foregoing evidence was the province of the trier of fact, in this case the criminal court judge, and we are not free to second-guess these factual determinations. Accordingly, we hold that the evidence sufficiently supports the defendant's contempt conviction.

**IV**

The defendant next argues that his constitutional due process rights were violated by the general sessions court which first found him guilty of contempt. He bases this claim on a laundry list of alleged shortcomings, including that he had no notice of the charge against him prior to his appearance, examination, and conviction of contempt in general sessions court on September 25, 2001 (the date of Erik Miller's show cause hearing), that he was neither advised of nor waived his right to counsel, that he was not advised of his right not to incriminate himself, that no affidavit of complaint was filed until after his conviction and entry of judgment, that he was not advised of his right to appeal the general sessions court conviction, that he did not have the opportunity to subpoena and present witnesses, that he did not have the opportunity to confront or cross-examine his accusers, and that the burden of proof was shifted in that he was improperly required to prove his innocence. Even though the defendant had a trial *de novo* in the criminal court, from which this appeal emanates, he claims that he is entitled to dismissal of the case due to the alleged due process violations at the general sessions court level. He raised this issue in the criminal court via motion to dismiss, but the criminal court held that any due process deficiencies were cured by the *de novo* criminal court trial.

A direct criminal contempt is one which is committed in the presence of the court and may be prosecuted summarily. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978). Procedurally, the judge must certify "that he or she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court," and the order of contempt must state the factual basis for the contempt, be signed by the judge, and be entered on the record. Tenn. R. Crim. P. 42(a). In contrast, indirect criminal contempt occurs outside the presence of the court and prosecution requires that the accused be afforded notice, an opportunity to be heard, and adequate time for preparation of a defense. *Black*, 938 S.W.2d at 398; *Maddux*, 571 S.W.2d at 821; *see* Tenn. R. Crim. P. 42(b).

-4-

We believe that the defendant's conduct in question occurred in the presence of Judge Walton, which means it was properly pursued as a matter of direct contempt. To the extent that there may be any question arising from the fact that the conduct did not occur during formal court proceedings, we note that the conduct constituting the contumacious conduct occurred when the defendant sought out Judge Walton to request an official act, the termination of Erik Miller's probation. Moreover, the defendant's conduct induced Judge Walton to perform that official act. As such, the locale of the action constituting the contempt is irrelevant. *See State v. Krichbaum*, 152 Tenn. 416, 278 S.W. 54 (1925) (whether court in session is irrelevant if contumacious conduct committed "within the verge of the court"); *State v. Thomas E. Cowan, Jr.*, No. E2000-02705-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 24, 2001) (attorney's attempt to "fix" case via *ex parte* telephone conversation with judge constitutes direct contempt); *see also* Tenn. Code Ann. § 29-9-102(1) (2000) (defining contempt). Accordingly, summary disposition of the charges was in order, and the general sessions court did not err or otherwise violate the defendant's due process rights by the procedure employed. *See Black*, 938 S.W.2d at 398; *Maddux*, 571 S.W.2d at 821; *see generally* Tenn. R. Crim. P. 42.

However, we do find fault with the order entered by the general sessions court relative to the defendant. At the time that Judge Walton found the defendant Johnston guilty of contempt, he entered the following handwritten order on Erik Miller's warrant.

> Def [sic] [referring to Erik Miller] sentence is flattened and to serve 109 days for p[erpe]trating a fraud upon the court, credit for time served. To be served [illegible]. Recruiter/Stepfather is in contempt of court for perp[e]trating a fraud upon the court [illegible] to release from probation. Charles Johnston is therefore sentenced to 10 days in the CC jail to be served immediately.

The state does not argue that this skeletal order complies with the prerequisites for summary criminal contempt proceedings under Rule 42(a), and we are unprepared to so hold. The order fails to address whether the judge saw or heard the conduct constituting contempt and whether such took place in the court's presence. *See* Tenn. R. Crim. P. 42(a). Moreover, the order fails to address its factual basis. *See id.* Thus, the general sessions court's order is deficient under Rule 42(a).

That said, however, we are not compelled to dismiss the proceedings altogether, as the defendant would have us do. A court which fails to follow the requisites of Rule 42(a) relative to the contents of its order holding an individual in contempt risks having its contempt finding dismissed on the basis of insufficient evidence to support the conviction. *See Varley v. Varley*, 934 S.W.2d 659, 664 (Tenn. Ct. App. 1996) (record did not specify conduct upon which contempt was based and judge did not certify that he saw or heard the offending conduct). However, the record in the case at bar contains Judge Walton's oral statements at the general sessions court hearing in which he found the defendant's actions to be the contemptuous conduct and certified that it was committed in his presence. The deficiency is that this was omitted from the written order. Although the better and correct practice would be for this information to be included in the order as required

by Rule 42(a), the defendant has not proven that he was harmed by the technical deficiency, especially in view of the *de novo* appeal and circuit court judgment which followed.

**V**

Next, we consider whether the criminal court erred by admitting into evidence an audiotape of the September 25, 2001 general sessions court proceedings. Prior to the introduction of the tape at the criminal court hearing, defense counsel objected that use of the tape was "an inappropriate way to introduce evidence" although it would be admissible for impeachment purposes. On appeal, the defense argues that the audiotape should not have been admitted as substantive evidence during the state's case-in-chief "[d]ue to the complete denial of the Appellant's constitutional, statutory and due process rights at the General Sessions Court level[.]" Apparently aware of the limitation that this court will not generally find error premised upon a theory raised for the first time on appeal, *see* Tenn. R. App. P. 36(a), the defendant asks us to notice the issue as one of plain error, *see* Tenn. R. Crim. P. 52(b).

We held in the previous section of this opinion that the defendant's due process challenge to the summary contempt proceedings would not lie because summary proceedings were appropriate for the facts of this case. Thus, there is no due process violation upon which to premise the plain error ruling relative to admission of the audiotape. This issue, therefore, is without merit.

**VI**

We move to the defendant's sentencing challenge. He claims that the sentencing procedure employed by the lower court was flawed, that the sentence was too harsh, and that he should have been granted judicial diversion.

In the past, the appellate courts have applied the general principles of the Criminal Sentencing Reform Act to criminal contempt convictions. *See, e.g., State v. Wood*, 91 S.W.3d 769 (Tenn. Ct. App. 2002); *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996). Moreover, at least a portion of that act explicitly applies to criminal contempt convictions. *See* Tenn. Code Ann. § 40-35-115(b)(7) (2003) (permitting consecutive sentencing for defendant convicted of criminal contempt). However, at least one court has said that the sentencing act does not apply *in toto. Wood*, 91 S.W.3d at 775-76.

It is unnecessary in this case for us to decide the precise contours of the Criminal Sentencing Reform Act's applicability in contempt matters. Suffice it to say that, contrary to the defendant's assertion on appeal, neither the procedure employed nor the punishment imposed were improper. The defendant was not entitled to a separate sentencing hearing, whether or not the Act applies in its entirety. *See* Tenn. Code Ann. § 40-35-302 (2003) (separate sentencing hearing not required for misdemeanor conviction); Tenn. R. Crim. P. 42(a) ("A [direct] criminal contempt may be *punished* summarily . . . .") (emphasis added); *Maddux*, 571 S.W.2d at 821 (direct criminal contempt may be punished summarily); *State v. Turner*, 914 S.W.2d 951, 957 (Tenn. Crim. App. 1995) ("summary punishment departs, often dramatically, from traditional notions of due process

that are the hallmarks of criminal justice"). As precedent holds is proper in most cases, the defendant was afforded the opportunity to address the court before he was found in contempt and punishment imposed.[1] *See Turner*, 914 S.W.2d at 961. Even if we assume that the Sentencing Act applies, the defendant is incorrect that the trial court was required to memorialize on the record that it considered the sentencing guidelines. *See State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999) (sentencing court required to make detailed findings on record in felony cases but not in misdemeanor cases).[2] We also reject the defendant's contention that the lower court's silence regarding a percentage of service of the sentence means that he does not have to serve any of his ten day sentence in actual confinement. *See Wood*, 91 S.W.3d at 776 (percentage-of-service provisions of Sentencing Act did not apply in to criminal contempt sentence arising from underlying civil case); *cf. Russell*, 10 S.W.3d at 278 ("When this court has been faced with a transcript of the sentencing hearing clearly indicating the trial court's intention that the defendant's percentage is not zero percent . . . we have deferred to the trial court's express pronouncement as reflected in the transcript.").

With respect to the sentence itself, we are unprepared to hold that the trial court erred. The court of appeals has said that a sentencing court in a criminal contempt case properly considers "the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." *Wood*, 91 S.W.3d at 776 (*quoting United States v. United Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677, 701 (1947)). The punishment imposed by the trial court of ten days in jail and a fine of $50 comports with these considerations.

In so holding, we likewise reject the defendant's claim that the lower court should have allowed judicial diversion. The lower court's denial of judicial diversion is subject to appellate reversal only if that court abused its discretion. *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983). When a defendant challenges the denial of judicial diversion, we are constrained not to revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Id.* at 356; *accord State v. Carr*, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (where the evidence is capable of justifying differing results in a pretrial diversion case, this court allows the prosecutor his or her discretion to decide whether to allow diversion).

In determining whether to grant judicial diversion, the trial court must consider

---

[1] The record reflects that before adjourning for lunch at the September 25 hearing, Judge Walton advised the defendant and Erik Miller that he believed they had both perpetrated a fraud upon the court. After lunch, Judge Walton allowed both the defendant and Miller to explain their actions at length.

[2] *See generally* Tenn. Code Ann. § 39-11-110 (1997) (misdemeanor is any violation of the law which is punishable by fine, confinement of less than one year, or both); *Leslie Ann Robinson v. William L. Fulliton*, No. W2002-01746-COA-R3-CV (Tenn. Ct. App., Jackson, Nov. 6, 2003) (criminal contempt is a misdemeanor as the term misdemeanor contemplated by the expungement statute).
.

(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether diversion will serve the public's and the accused's interests in the ends of justice.

*State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2002) (citation omitted). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. *Id.* (citations omitted). The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id*.

The trial court in this case denied diversion on the basis that the defendant committed a deliberate fraud upon the court. However, it did not explain whether it had considered all of the other factors. Thus, the question is whether the trial court reached the correct result notwithstanding its failure to explain its analysis on the record. *See State v. Talmadge G. Wilbanks*, No. 02C01-9601-CR-00003 (Tenn. Crim. App., Jackson, Nov. 19, 1996) (trial court's denial of diversion affirmed despite court's failure to explain its considerations and analysis on the record), *perm app. denied* (Tenn. 1997).

We cannot conclude that the court abused its discretion in denying judicial diversion. The trial court determined the defendant was deliberately untruthful and fraudulent. We believe the nature of the defendant's deceptive conduct weighs against his amenability to correction. *See, e.g., State v. Paul Emile Oliver*, No. 03C01-9510-CC-00332 (Tenn. Crim. App., Knoxville, July 15, 1996) (denial of pretrial diversion upheld based upon appellant's inconsistent statements to the trial court about his involvement in drug sales prior to apprehension); *State v. Nease*, 713 S.W.2d 90 (Tenn. Crim. App. 1986) (defendant who was untruthful with trial court appropriately denied diversion).

In sum, we are unpersuaded of reversible error with respect to the sentencing procedure and outcome in this case.

## VII

Finally, we come to the defendant's claim that the trial court set an excessive appeal bond. Without citation to authority, he claims that this issue "is not a moot or unimportant issue." However, we conclude that the issue is waived for two reasons.

First of all, the issue of bond pending appeal is one which is appropriately raised by written motion for review in this court or the trial court. *See* Tenn. R. App. P. 8(a); *State v. Wright*, 836 S.W.2d 130, 136 (Tenn. Crim. App. 1992). The defendant has not complied with Rule 8.

Second, the defendant has failed to cite any authority in his brief. *See* Tenn. R. Ct. Crim. App. 10(b) (issues not supported by citation to authority are waived).

For all of these reasons, the judgment of the trial court adjudicating the defendant in criminal contempt of court and imposing a ten day jail sentence and a $50 fine is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE