IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, l995

FILED

March 25, 2008

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | |
| APPELLEE | ) | NO. 01C01-9409-CC-00316 |
| | ) | |
| | ) | WILLIAMSON COUNTY |
| | ) | |
| V. | ) | HON. CORNELIA A. CLARK, JUDGE |
| | ) | |
| | ) | (Aggravated Assault) |
| | ) | |
| RICHARD WAYNE OTEY | ) | |
| | ) | |
| APPELLANT | ) | |


FOR THE APPELLANT:

John H. Henderson
District Public Defender
P.O. Box 68
Franklin, TN 37065-0068

FOR THE APPELLEE:

Charles W. Burson
Attorney General

Kimbra R. Spann
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Joseph D. Baugh, Jr.
District Attorney General
P.O. Box 937
Franklin, TN 37064


AFFIRMED


OPINION FILED:_____


JERRY SCOTT, PRESIDING JUDGE

## O P I N I O N

The appellant, Richard Wayne Otey, appeals as of right from a judgment entered in the Circuit Court of Williamson County, finding him guilty of aggravated assault in violation of Tenn. Code Ann. § 39-13-102(a). Following a sentencing hearing, the trial judge sentenced the appellant to ten years in the Department of Correction as a Range II, multiple offender, to be served consecutively to a sentence for which the appellant was on parole at the time of the offense at issue in this case.

On appeal, the appellant raises two issues for consideration by this Court: (a) whether the evidence presented at trial was sufficient to allow a rational jury to find the appellant guilty beyond a reasonable doubt; and (b) whether the sentence imposed by the trial court was excessive. There is no merit to either contention.

## FACTS

Barbara Derricks, a detective employed by the Franklin Police Department, testified that on May 22, 1993, she responded to a call that a stabbing had occurred at 126B Fowlkes Street in Franklin. She initially went to the Williamson County Medical Center to see the victim, Michael Harrison, but he was unconscious. While at the hospital, she observed and photographed three wounds to the victim's body. He had been cut across his cheek and stabbed in his left side and in his chest. The chest wound was the deepest and most severe wound. The knife used to inflict the wounds to the victim was never recovered.

Investigation by Ms. Derricks revealed that six men, including the appellant and the victim, were riding around in an automobile and drinking for most of the morning and afternoon on the day of the offense. Specifically, the

2

appellant was driving, David Reed's brother was in the front passenger seat, George Robinson, the victim's brother, and David Reed were in the rear seat, and the victim and Walter Baugh were in the hatch-back area. She testified that as part of her investigation she interviewed Mr. Reed, Mr. Robinson, Mr. Baugh, the victim, and the appellant.

On May 27, 1994, the day the appellant was apprehended, he executed a signed statement that was prepared by Ms. Derricks. In his confession, the appellant stated:

> I was riding in the car with David Reed, Jr. (Walter) Baugh & Simp (George) Robertson. They was talking about my brother. They all had played cards with my brother some time in the past. They was talking about how he acted. I told them, they should know how he was. They are friend they should be able to get along better. We kept riding, we was near Hoad's Liquor store. Bear Belly slapped me. We continued on to my apt. on Foukles St. when I got out of the car, he slapped me again. He called me a bitch while we was riding. We started fighting in front of my house, that's when I cut him.

David Reed testified that on the day of the offense all the men were riding around and drinking. He described the atmosphere in the car as "playful." He stated that at some point the vehicle stopped at or near the appellant's residence. There, the victim engaged in an argument with Annette Walker in which she slapped the victim and then the victim either slapped or choked her. At that point, the appellant told the victim to leave the premises. He estimated that these events transpired ten to fifteen minutes prior to the stabbing. He stated that all of the men got back into the vehicle and began to ride around again. He observed no physical contact between any of the passengers. He stated that no one in the vehicle seemed angry and that the conversation was ordinary. When the car stopped again, he did not witness the stabbing, but did see the victim lying on the ground with blood spurting from his body.

3

The victim was the final witness for the prosecution. He testified that the men were riding around drinking beer and that no one was angry. He admitted that the slapping incident with Ms. Walker occurred. He did not recollect that the appellant told him to leave the premises. Instead, he remembered the appellant telling him that he should get in the car before he got in trouble. He and the other men then got back into the vehicle and continued riding around. He stated that he thought the incident with Ms. Walker was concluded and that no one in the vehicle appeared angry.

A few minutes later, the vehicle stopped again. The victim stated that the appellant cut him across his left cheek with a knife just as he got out of the hatch-back and began to turn around. The appellant proceeded to stab him in the chest and then in the left side. The victim stated that he passed out almost immediately, not regaining consciousness until he was in the hospital. He stated that he never hit the appellant and that he never gave the appellant any reason to be angry with him or to fear him. Due to the injuries he suffered in the stabbing, the appellant had to be hospitalized for five days, three of which were in the intensive care unit.

The appellant chose to present no proof in his defense. Thereafter, the jury found the appellant guilty as charged.

**DISCUSSION**

In his first assertion of error on appeal, the appellant contends that the evidence of his guilt was insufficient. Specifically, he contends that the state failed to prove that he had the requisite mental state to commit the offense.[1]

---

[1]In defining the offense of aggravated assault, T.P.I.--Crim. 6.02, provides that the defendant must have "intentionally, knowingly or recklessly" inflicted bodily injury on another. "Intentional" is defined in Tenn. Code Ann. § 39-11-106(a)(18) as referring "to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's

4

After a careful and thorough review of the record, we find that this issue is without merit.

The principles which govern this Court's review of a conviction by a jury are settled. This Court must review the record to determine if the evidence adduced at trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to determinations of guilt predicated upon direct evidence, circumstantial evidence, or a combination thereof. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In examining the sufficiency of the evidence, this court does not reevaluate the weight or credibility of the witnesses' testimony as those are matters entrusted exclusively to the jury as the finders of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Wright, 836 S.W.2d 130, 134 (Tenn. Crim. App. 1992). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Hatchett,

---

conscious objective or desire to engage in the conduct or cause the result." "Knowing" is defined in Tenn. Code Ann. § 39-11-106(a)(20) as referring "to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." "Reckless" is defined in Tenn. Code Ann. § 39-11-106(a)(31) as referring "to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint. See also: Tenn. Code Ann. § 39-ll-302(a)(b) and (c).

5

560 S.W.2d 627, 630 (Tenn. 1978).  On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Moreover, a verdict against the appellant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), which the appellant has the burden of overcoming. State v. Brown, 551 S.W.2d 329, 330 (Tenn. 1977).

Where the sufficiency of the evidence is at issue, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have determined that the essential elements of the crime were established beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 314-324, 99 S. Ct. 2781, 2786-2792, 61 L. Ed. 2d 560 (1979).  In addition, a conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the [appellant] and the [appellant] alone." State v. Crawford, 225 Tenn. 478, 484, 470 S.W.2d 610, 612 (1971).

The appellant emphasizes in his brief that the state has the burden of proving each and every element of an offense beyond a reasonable doubt and with moral certainty, citing State v. McLerran, 604 S.W.2d 841, 845 (Tenn. 1980); Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105, 107-8 (1962); State v. Underwood, 614 S.W.2d 385, 386 (Tenn. Crim. App. 1980).  We obviously concur with that proposition, but find that the state has proven each and every element of the offense in this case, including the intent of the appellant.

It has been long established that a jury may infer a criminal defendant's intent from the surrounding facts and circumstances. State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984); Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973);

6

Burns v. State, 591 S.W.2d 780, 784 (Tenn. Crim. App. 1979). Indeed, the actions of a defendant constitute circumstantial evidence of his intent. State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993); State v. Barker, 642 S.W.2d 735, 737 (Tenn. Crim. App. 1982). Moreover, "[i]ntent may, and necessarily must in most cases, be inferred from the facts; as from the fact that a felony is actually committed or attempted . . . ." Holland, 860 S.W.2d at 59 n. 14, quoting Justin Miller, Criminal Law § 108, at 338 (1934).

The circumstantial evidence introduced at trial supports an inference by the jury that the appellant intended to stab the victim. First, it appears from the evidence that after the victim slapped Ms. Walker the appellant either told the victim to leave the premises or told him to get in the vehicle before he got in trouble. Second, although controverted by other evidence, the appellant's signed confession states that the victim slapped the appellant twice and called the appellant a profane name prior to the stabbing. It also purports that the appellant and the victim got into a fight which concluded in the stabbing. Finally, and perhaps most significantly, evidence was presented to the effect that the appellant, though unprovoked, approached the victim and stabbed the victim three times, each time in a different area of the body.

Based on this evidence, it is clear that the jury could properly infer that the appellant "intentionally" assaulted the victim with the knife. Moreover, it is difficult for this Court to even conceptualize a speculative theory, based on the facts of this case, under which the appellant would not have committed the crime in at least a "knowing" or "reckless" manner. Even assuming other reasonable inferences could be drawn from the surrounding facts and circumstances, this would not be a proper inquiry for this Court. The adoption or rejection of potential inferences based on circumstantial evidence is a question almost exclusively within the province of the jury, although "the mind of the [appellate] Court must rest easy as to the certainty of guilt of the defendant." Crawford, 470

7

S.W.2d at 612; Williams v. State, 520 S.W.2d 37l, 374 (Tenn.Crim.App. l974) ("(t) he inferences to be drawn from circumstantial evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury"); State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992) ("(w)hether other reasonable inferences are excluded by the circumstantial evidence is a question for the jury," citing Crawford and Williams).  This issue has no merit.

In the appellant's other issue, he argues that the trial court's sentencing of him to the maximum sentence of ten years was excessive.  He requests that this Court reduce the sentence to a term not in excess of eight years.  Upon review of the record of the sentencing hearing, we cannot agree with the appellant's contention.

In examining the propriety of a sentence rendered against a criminal defendant, this court must conduct a de novo review based on the record. Tenn. Code Ann. § 40-35-401(d).  However, this court must presume that the determinations made by the trial judge are correct. Id.  Therefore, if our review reveals that the trial judge imposed a lawful sentence pursuant to the Tennessee Criminal Sentencing Reform Act of 1989 after having given proper consideration and weight to the relevant sentencing factors under the Act and the sentence is based on findings of fact which are adequately supported by the record, then we must not disturb the sentence imposed by the trial court. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  Furthermore, the appellant has the burden of establishing that the sentence rendered by the trial court was erroneous. Tenn. Code Ann. § 40-35-401(d)(sentencing commission comments); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Anderson, 880 S.W.2d 720, 727 (Tenn. Crim. App. 1994).

8

Concerning the purposes of sentencing and what constitutes an appropriate punishment, the Sentencing Reform Act provides that the sentence imposed shall be one that is "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The Act also mandates that the sentence be the least severe measure necessary to achieve the purpose of the Act and that inequalities should be avoided. Tenn. Code Ann. §§ 40-35-103(3),(4); see Ashby, 823 S.W.2d at 168.

The portion of the Sentencing Reform Act of 1989, codified at Tenn. Code Ann. § 40-35-210(b), established several specific procedures to be followed in the sentencing process. This section mandates the trial court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) The presentence report; (3) The principles of sentencing and arguments as to sentencing alternatives; (4) The nature and characteristics of the criminal conduct involved; (5) Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) Any statement the defendant wishes to make in his own behalf about sentencing.

See Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

The presumptive sentence shall be the minimum sentence in the range if no enhancement or mitigating factors exist. Tenn. Code Ann. § 40-35-210(c). If enhancement factors exist but there are no mitigating factors, then the trial court may set the sentence above the minimum in that range but still within the range. Id. at § 40-35-210(d). Should both enhancement and mitigating factors exist, which is not the situation in the present case, the court must start at the minimum sentence in the range and enhance the sentence within the range as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. Id., § 40-35-2l0(e); State v. McMurry, No. 01C01-9311-CR-00405, 1994 WL 179776, at *1 (Tenn. Crim. App. May 12, 1994).

In the present case, the appellant does not contend that the trial court failed to properly follow any sentencing procedure. He simply proffers the conclusory statement that the sentence imposed is excessive. We disagree.

At the sentencing hearing, the appellant conceded and the trial judge found that no mitigating factors were applicable. The trial judge also found that five enhancement factors were applicable. First, the state introduced evidence that the appellant had four prior felony and two misdemeanor convictions. Therefore, the appellant's criminal history surpassed the requisite two felony convictions, making the appellant a multiple offender and, therefore, the surplus or additional convictions could be properly used as an enhancing factor. Tenn. Code Ann. § 40-35-114(1). A second enhancement factor applied by the trial court was that the personal injuries inflicted upon the victim were particularly great. Id. at § 40-35-114(6). Given the fact that the victim was hospitalized for several days, including three days in the intensive care unit, application of this factor was clearly appropriate.

The trial judge also found that the appellant has a history of unwillingness to comply with the conditions of a sentence involving release in the community, since he committed this offense while on parole and failed to report his arrest. Tenn. Code Ann. § 40-35-ll4(8).

The enhancement factor set forth at Tenn. Code Ann. § 40-35-114(13)(B), was also properly applied since the appellant was on parole at the time of the perpetration of the present offense. We note that the application of this factor and factor (8) does not subject the appellant to double enhancement. As this Court recently stated in State v. Brewer, "In our view, these [factors] have been properly treated as separate enhancement factors. The defendant failed to report as required by the conditions of his prior probation; obviously he committed this [offense] during the time of that probation." 875 S.W.2d 298, 303

10

(Tenn. Crim. App. 1993); see also State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993)(applying enhancement factor (8)).  Although here the appellant was on parole rather than probation, the analysis of Brewer is both apposite and compelling.  Furthermore, the fact that the appellant had only failed to report the offense at issue, as opposed to multiple offenses while on parole, goes to the weight factor (8) should be given, not to its applicability.

We cannot, however, uphold the finding of the applicability of the fifth enhancement factor which the trial court applied, namely, that the appellant had no hesitation about committing the offense even though the risk to human life was great.  See Id. at § 40-35-114(10).  We address this issue sua sponte as part of our de novo review.  In State v. Hill, this Court held:

> This factor is inherent in the offense of aggravated assault. State v. Tony Von Carruthers, Shelby County No. 02-C-01-9102-CR-00019, 1991 WL 147946 (Tenn. Crim. App., Jackson, August 7, 1991).  As this Court said in State v. Kevin L. Gaskell, Bradley County No 285, 1991 WL 112275 (Tenn. Crim. App., Knoxville, June 26, 1991):  "It is difficult to discern a situation in which an offense committed with a deadly weapon would not necessarily entail a risk to human life."
> Slip op. at 11.

885 S.W.2d 357, 363 (Tenn. Crim. App. 1994); see Strickland, 885 S.W.2d at 89.  Thus, the trial court's application of this factor was error.

In conclusion, four of the five enhancement factors relied upon by the trial court were properly applied.  We are of the opinion, however, that the defendant has failed to meet his burden of showing why his sentence is excessive. Ashby, 823 S.W.2d at 169; Anderson, 880 S.W.2d at 727.  In other words, despite the negation of one of the factors, we are satisfied that, absent any mitigating factors, the four properly applied enhancement factors are of sufficient weight to justify the sentence rendered by the trial court.  This issue has no merit.

11

Finding absolutely no merit to either issue, the judgment is affirmed.


_____
JERRY SCOTT, PRESIDING JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
DAVID G. HAYES, JUDGE